IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STEVEN D. STEWART,

                                        ORDER

                Plaintiff,

                                  10-cv-360-bbc

       v.

Former Secretary MATTHEW FRANK,
RICH RAEMISCH, CYNTHIA THORPE,
JOHN and JANE DOES in Madison,
RICHARD SCHNEITER Wisconsin D.O.C.,
Warden PETER HUIBREGTSE, GARY BOUGHTON,
MONICA HORNER, CAPT. BROWN, CAPT. BOISEN,
CAPT. GERL, CAPT. GARDNER, CAPT. GILBERG,
CAPT. MASON, CAPT. SHARPE, LT. HANFELD,
LT. TOM, C.O. JUERGEN, C.O. JOSETH HASSELL,
C.O. TRACY MARTIN, SGT. P. HENNEMAN,
C.O. L. JOHNSON, C.O. CAYA, SGT. THOMAS SCHMIDT,
C.O. MCLIMANS, C.O. DANE ESSER, C.O. SCULLION,
SGT. SICKINGER, C.O. NELSON, C.O. HINRICHS,
SGT, BLOYER, SGT. CARPENTER, C.O. COCKROFT,
C.O. HULCE, T. BELZ the father, C.O. BELZ the son,
C.O. BEARCE, C.O. A. JONES, C.O. C. FINNELL,
3RD Shift JONES, CHRISTINE BEERKIRSHER,
ELLEN K. RAY, KELLY TRUMM,
Social Worker A. JOHNSON, SGT. WALLACE,
SGT. WRIGHT, LT. GRONDIN, SGT. RICHTER,
C.O. FRIEDRICK, DR. BURTON COX,
Nurse CINDY SAWINSKI, Nurse MARY MILLER,
Nurse JOLINDA WATERMAN, Nurse MAURA,
Nurse VICKY, Nurse BONNIE STOBNER,
JANE and JOHN DOE Staff at Wisconsin Secure Program Facility,

1

Nurse DEB CAMBELL, Warden PHIL KINGSTON,
Unit Manager BRUCE SCHLESLAG, SGT. BILLY SCHLESLAG,
SGT. MAYS, ANGELINA KROLL, DR. CHARLIE LARSON,
Health Manager BELINDA SCHRUBBE, Nurse GAIL,
Warden GREG GRAMS, CAPT. RADTKE, C.O. BIDLEMAN,
C.O. NEUMAIER, C.O. SWANSON,  C.O. KROCKER,
C.O. ISSACSON, SGT. KOTTKE,  SGT. AL PULVER,
LT. SCHOENBERG, JANEL NICHOL, DR. D. SULIENE,
Nurse STEVE, Warden ROBERT HUMPHREYS,Deputy PAUL KEMPE,
JAY ALDANA, ADAM GEGARE, NANCY PADGETT, C.O. HERWIG,
C.O. STINE, SGT. BARRY, LT. K. SCHMIDT, DR. LUY,
JANE and JOHN DOE Staff at Racine, DR. BRUCE HARMS,
DR. BRADLEY WATERMAN, DR. CRYLEN,
DR. BENJAMIN R. BROOKS,  DR. JOSETH P. HEISE,
District Attorney, LISA RINIKER, Grant Co. Sheriff KEITH GOVIER,
SGT. KOPP and Detective TRAVIS KLAAS,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Steven D. Steward is suing almost 100 different individuals for their mistreatment of him at different prisons.  Because plaintiff is a prisoner and is asking for leave to proceed without prepayment of costs, under 28 U.S.C. § 1915 the court must screen plaintiff's complaint and dismiss any claims if they are frivolous, malicious, fail to state a claim or seek monetary relief from a defendant who is immune.  Plaintiff has made a required initial partial payment of the filing fee, so his complaint is now ready for screening under 28 U.S.C. § 1915.  However, because the different claims plaintiff has brought cannot be joined in a single lawsuit under Fed. R. Civ. P. 20, plaintiff must first decide which one

2

of the groups of claims he will pursue in this case and which, if any, he will pursue in a separate case.

Fed. R. Civ. P. 20(a) governs the number of parties a plaintiff may join in any one action.  It provides that multiple defendants may be sued together when the injuries each defendant allegedly caused plaintiff arise out of "the same transaction, occurrence, or series of transactions or occurrences" and there is "any question of law or fact common to all defendants."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); 3A Moore's Federal Practice ¶ 20.06, at 2036-2045 (2d ed. 1978).  Generally, under Rule 20 a plaintiff may not bring a single lawsuit against different defendants for different incidents.

Plaintiff's complaint includes many different claims against many different defendants.  The following groups of claims cannot be joined in the same lawsuit under Rule 20:

1.  Around June 2005, defendant Bonnie Stobner refused to allow plaintiff to use a catheter or catheterize himself despite a doctor's order and in September 2005, defendants Cindy Sawinski and Jolinda Waterman stopped plaintiff from self-catheterizing and made him wear a urinary bag and defendant Captain Gilberg put plaintiff on a "back of cell" status for changing his catheter.

2.  June 24, 2005, defendant Sgt. Wright took away plaintiff's cushion for his prolapse and elbowed plaintiff 7 or 8 times in retaliation for a 2005 lawsuit, following defendant Capt. Gerl's orders.

3.  (a) On March 8, 2006, defendants Thomas Schmidt, Joseth Hassell, Tracy Martin, Sgt. Henneman and C.O. Johnson attacked plaintiff while he was

3

restrained, undoing his prolapse surgery, because he asked for medical help and because he is "black, prisoner and etc"; (b) defendant Burton Cox refused to provide medical treatment for plaintiff's broken elbow and delayed treatment for the undone prolapse; (c) defendant Friedrichs moved plaintiff after the incident; (d) defendant Monica Horner destroyed the video of the incident; (e) defendant Lisa Riniker improperly charged plaintiff with a crime for the incident because he is black and she is biased; (f) defendant Travis Klaas fed an eyewitness false information about the incident; (g) defendants Keith Govier and Sgt. Kopp knew plaintiff never committed any crime; (h) defendants Cindy Sawinski and Captain Gilberg drew blood after the incident to help frame plaintiff and Gilberg moved plaintiff to the Alpha unit; (i) defendant Hassell threatened to murder plaintiff after plaintiff was found not guilty of the crime; and (j) defendant Klaas investigated Hassell's threat despite a conflict of interest.

4.     (a) On April 5, 2006, defendants Hassell and C.O. McLimans attacked plaintiff in an elevator before he was to receive surgery; (b) defendant Hassell threatened plaintiff with a taser and used racial remarks during transport back to prison; and (c) defendant Juergen throught Hassell and McLimans were wrong but did not help.

5.     On April 6, 2006, defendants Sgt. Richter and C.O. Friedrick walked plaintiff out of a hospital naked although they had his clothes.

6.     (a) In May 2006, defendant Sgt. Mays put plaintiff in a dirty cell with another prisoner's feces on the wall; and (b) defendant Angelina Kroll lied about whether plaintiff had filed inmate complaints related to the dirty cell.

7.     (a) In June 2006, defendant Belinda Scrubbe failed to answer 30 medical requests related to medication and self-catheterization; and (b) defendant Angelina Kroll lied about whether plaintiff had filed inmate complaints related to medical requests.

8.     Defendants Burton Cox and Charlie Larson failed to provide plaintiff any medical care for his July 2006 hernia.

9.     (a) In July 2006, defendant Bruce Harms canceled an appointment to repair

plaintiff's prolapse surgery and catheter change; and (b) defendants Burton Cox, Bruce Harms and Joseth Heise lied about plt.'s need for prolapse surgery and the seriousness of his condition.

10.    Defendants Cynthia Thorpe, Belinda Schrubbe and Charles Lawson were involved in some way in an incident in which plaintiff was dying bleeding from his stomach and rectal area.

11.    (a) On February 21, 2007, defendants Hassell, C.O. Belz and T. Brown punched and choked plaintiff during a medical examination; and (b) defendant Jolinda Waterman failed to intervene.

12.    On March 5, 2007, defendant Friedrick told plaintiff that he "was leaving out the building until [plaintiff] take[s his] nigger dreadlocks out."

13.    On March 27, 2007, defendants C.O. Caya, Sgt. Sickinger and Gerl performed a cell search and suited up with riot gear for no reason.

14.    (a) On April 27, 2007, defendants Gerl, Sickinger, Caya and Esser put on riot gear to pull out plaintiff's catheter and provided no medical treatment; and (b) defendant Jolinda Waterman tried to lie about the incident although she was not there.

15.    Defendants Sickinger and Caya refused to feed plaintiff for 38 days.

16.    On May 27, 2007, defendants Sickinger, Caya and Hulce took 67 of plaintiff's cards and letters and threw away family obituaries.

17.    In June 2007, defendant Sgt. Carpenter blocked plaintiff's visits on the Alpha unit.

18.    Around July 10, 2007, defendant Jolinda Waterman failed to provide medical treatment after plaintiff was sprayed with chemical agents.

19.    (a) In July 2007, defendant C.O. Williams gave plaintiff a bag of rotten food; and (b) defendant T. Belz took the food to the I.C.E., who tried to cover it up.

5

20.    (a) On October 18, 2007, defendant C.O. Bearce battered plaintiff by twisting his arm, "etc." while defendant C.O. Scullion "cheered him on"; and (b) defendant Bearce lied about the incident in a conduct report.

21.    (a) On November 13, 2007, defendant C.O. Issacson put plaintiff in a "nasty" cell; and (b) defendant C.O. Bidleman put plaintiff on 7 restrictions and lied in a conduct report.

22.    (a) Defendants Captain Radtke, C.O. Neumaier, C.O. Swanson, C.O. Krocker, Sgt. Al Pulver, Janel Nichol and Greg Grams "turned a blind eye" to plaintiff's conditions, including a 5-month delay in changing his catheter, plaintiff's sleeping on a dirty floor and racial abuse); (b) defendants Bidleman and Neumaier talked about plaintiff's urinary bag and called him "nigger"); and (c) Grams and Nichol "approved this."

23.    (a) When plaintiff was at the Columbia Correctional Institution, defendant Greg Grams transferred plaintiff to the Wisconsin Secure Program Facility and defendant Peter Huibregste accepted him despite plaintiff's special placement needs; and (b) Rick Raemisch "rubber-stamped" the transfer decision.

24.    (a) On June 4, 2008, defendant Adam Gregare cut off plaintiff's clothes, pulled out his hair and choked him while defendants Sgt. Barry and C.O. Stine held plaintiff down during the attack; (b) after that, Gregare blocked plaintiff from writing utensils, visits and phone calls; (c) defendant Dr. Luy failed to adequately treat plaintiff's swollen and broken elbow and lied about the condition of his elbow; (d) defendants Jay Aldana, Adam Gregare, Lt. Schmidt and C.O. Herwig stopped plaintiff from getting an x-ray, called him "nigger," made him sit on the floor naked with prolapse and urinary bag and denied him 5 prison visits after the incident; and (e) On July 22, 2008, Gregare held a hearing related to the incident in plaintiff's involuntary absence and directed a "transfer kidnapping."

25.    (a) When plaintiff was at the Racine Correctional Institution, defendant Robert Humphreys transferred plaintiff to the Wisconsin Secure Program Facility and defendant Peter Huibregste accepted him despite plaintiff's special placement needs; (b) Rick Raemisch "rubber-stamped" the transfer decision; and (c) Robert Humphreys refused to let plaintiff see his family or tell his

family that he had been hurt and on July 29, 2008, he lied to plaintiff's mother.

26.   (a) On July 22, 2008, defendant Radtke took plaintiff's doctor-approved armsling and forced plaintiff to kneel despite medical restrictions; (b) defendants Sgt. Al Pulver, C.O. Neumaier, C.O. Swanson, C.O. Krocker failed to intervene and took plaintiff to a cell that had another prisoner's feces smeared all over the cell and window.

27.   In August 2008, defendant Lt. Schoenberg stopped plaintiff from receiving treatment from U.W. Health.

28.   On August 24, 2008, defendant C.O. Scullion told plaintiff "I heard you got your ass whup nigger."

29.   On September 1, 2008, defendants C.O. Scullion, C.O. Caya, Sgt. Hill, Lt. D. Esser refused to give plaintiff's clothes back and made racist and sexual comments after plaintiff showered; and (b) following that incident, defendant Capt. Sharpe was "involved" in keeping plaintiff from his clothes for three days.

30.   (a) Defendants Capt. Mason and Monica Horner placed plaintiff on restrictions for filing complaints; and (b) Kelly Trumm and Christine Beerkirsher refused to process many of plaintiff's complaints.

31.   From August 24, 2008 to March 2009, defendants Sgt. Carpenter, Third Shift Officer Jones, C.O. Finnell, C.O. Cockroft and C.O. Watters harassed plaintiff "beyond belief" every night by turning on bright lights, beating on windows, refusing to send out and stealing mail.

32.   (a) On September 7, 2008, defendants C.O. Jones and Hulce took or interfered with plaintiff's mail; (b) on October 30, 2008, defendant Cockroft took plaintiff's mail; (c) on January 5, 2009, defendant C.O. Finnell returned plaintiff's mail; (d) on February 2, 2009, defendants Brown, Hulce, and C.O. Jones refused to send out plaintiff's mail; and (e) defendant Hulce refused to send mail out again on February 9, 2009.

7

33.   (a) On November 21, 2008, defendant C.O. Jones called plaintiff a "nigger" and threatened to put a noose around his neck and choke him to death; and (b) defendant Sgt. Carpenter "joined in."

34.   Defendant A. Jones retaliated against plaintiff for filing a complaint against a family member.

35.   Defendants A. Jones, Lt. Tom and Capt. Mason deprived plaintiff of food for four days straight in February 2009.

36.   Defendant Sgt. Primmer refused to copy plaintiff's papers.

37.   (a) On April 30, 2009, defendant Scullion twisted plaintiff's fractured arm; and (b) defendant Sickinger wrote a conduct report and covered up for Scullion.

38.   (a) From at least November 2009 to March 2010, defendant Sgt. Bloyer denied plaintiff help during medical emergencies, refused his access to medical appointments and denied his requests for recreation time; and (b) she used profanity and racist words.

39.   In March 2010, defendant Cox refused to provide medical care for another hernia.

40.   In May 2010, defendants Capt. Brown, Sgt. Sickinger, C.O. Nelson, Sgt. Bloyer, C.O. Lt. Hanfeld and Warden Huibregste prosecuted a false conduct report in retaliation for plaintiff's filing a complaint.

41.   Defendant Sgt. Carpenter retaliated against plaintiff by falsely claiming plaintiff tried to send out a letter with another prisoner's number on it.

42.   On February 9, 2010, defendants Sickinger, Hinrichs, Nelson and Caya put plaintiff in a strip cage for 3 hours and took 150 letters and lied in a conduct report.

43.   (a) Defendant D. Gardner signed trumped up conduct reports and defendants Social Worker A. Johnson and D. Gardner lied about plaintiff's incarceration

8

status related to parole; and (b) Peter Huibregste ordered his staff to teach plaintiff a lesson for filing a lawsuit and for being black by writing as many conduct reports and restrictions as they could to keep plaintiff in segregation and interfere with his ability to receive parole.

Plaintiff may notice that this list, as lengthy as it is, does not include all of the problems plaintiff complains about.  This is for two reasons.  First, some of the problems plaintiff describes relates to individuals not named in the caption, including acts by: Polinske, Aldrich Reid, Program Review Committee staff, the parole commissioner, T. Kroening, Capt. McCullick, Nurse Debbie Campbell, Steven Ferrel, Sgt. Jones (plaintiff names only A. Jones and a C.O. Jones although he describes the acts of a Sgt. Jones as well), J. Huibregste, Eder, C.O. Pelky, crisis worker Shannon-Sharpe,  Michael E. Nieskes, C.O. Gerretsen, Nurse Sarah, Deputy Warden of CCI, Sgt. Wiggleworth, Lt. Bruetner, C.O. Kaufman and Lt. Brudos.

Second, plaintiff describes several acts that are not connected to any particular actor, such as the destruction of his property when he was transferred and his placement in administrative segregation.  Although plaintiff names John and Jane Doe actors, he does not mention any particular Doe as having been involved in any of these acts.  A plaintiff cannot simply place "Jane and John Does" in the caption and hope that these names will catch all claims without actors.  Instead, the plaintiff must identify the Jane or John Doe as much as possible and at least distinguish between different Does.  (For example, John Doe #1 did X

9

and John Doe #2 did Y.)

Although there are 43 groups of claims that cannot be joined under Rule 20, some of these groups may be joined under Fed. R. Civ. P. 18. Rule 18 allows a plaintiff to add claims to a group of claims joined under Rule 20 if they involve no defendants other than those already within that group. Fed. R. Civ. P. 18. In this case, there are a number of smaller groups that could be joined to one or more of the larger groups of claims under Rule 18. Rather than describe every possible combination, it makes more sense to allow plaintiff to choose the group or groups that he wants to pursue and if any of those groups can be combined using Rule 18, the court will do so.

Although plaintiff is free to pursue as many of the listed groups as he wishes, he cannot do so in a single lawsuit. He will have to pick one of the 43 to pursue in this case. He may pursue as many additional groups of claims as he wishes, but each group will have to be assigned a separate case number and plaintiff will have to pay a separate $350 filing fee for each such case, including an initial partial payment of the fee. (As explained above, depending on the groups of claims that plaintiff chooses, some may be joined under Rule 18, which I will decide after plaintiff makes his selections. In addition, plaintiff may be subjected to "strikes" for any case in which claims are dismissed for one of the reasons set out in 28 U.S.C. § 1915(g).

At this point, I have made no assessment of the merits of any of the groups of claims

10

listed above, but it is worth noting that after plaintiff chooses his lawsuits, he will likely have to make additional repairs to his complaint before proceeding.  Many of his claims are described in extremely vague terms, with little explanation about what acts each defendant took that may have violated the law.  Under Fed. R. Civ. P. 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8 also requires that the complaint contain enough allegations of fact to make a claim for relief "plausible" on its face.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007); <u>Aschcroft v. Iqbal</u>, 129 S. Ct. 1937, 1953 (2009) (holding that the plausibility standard set forth in <u>Twombly</u> applies to "all civil actions").

For a complaint to state a "plausible" claim for relief under <u>Twombly</u> and <u>Iqbal</u>, the complaint must include enough detail about what each defendant did to show a real possibility (and not just a guess) that plaintiff might be able to prove each element of his claims after he has an opportunity to fully investigate them.  <u>Bell Atlantic Corp.</u>, 550 U.S. at 555; <u>Riley v. Vilsack</u>, 665 F. Supp. 2d 994, 1004 (W.D. Wis. 2009).  In determining whether the details in the complaint satisfy this standard, a district court should disregard "mere conclusory statements" and consider only the factual allegations.  <u>Iqbal</u>, 129 S. Ct. at 1949.  Many of plaintiff's claims amount to nothing but conclusory statements about what laws plaintiff thinks defendants violated.  However, it does not make sense to require plaintiff to repair those problems until plaintiff decides which cases he will pursue.

Plaintiff may have until September 10, 2010 to choose which separately numbered group of claims he will pursue in this case and which of the remaining groups of claims he will pursue separately and which he will withdraw voluntarily.  To avoid confusion, plaintiff should use the number listed for a particular group of claim to refer to that group (group #43, for instance).  Once plaintiff identifies the suits he wants to continue to litigate and pays any additional filing fees in those cases, I will screen the individual actions that remain, as required under 28 U.S.C. § 1915(e)(2).

ORDER

IT IS ORDERED that

1.  Plaintiff may have until September 10, 2010, in which to identify for the court the separately numbered group of claims identified in the body of this opinion on which he wishes to proceed under the number assigned to this case.  Plaintiff's initial partial payment will be applied to this group.

3.  Plaintiff may have until September 10, 2010, in which to advise the court which of the remaining separately numbered groups of claims he will prosecute, if any, and which he will withdraw voluntarily.

4.  For any group of claims that plaintiff dismisses voluntarily, he will not owe a filing fee.

5.  If, by September 10, 2010, plaintiff fails to respond to this order, I will enter an order dismissing the lawsuit as it presently exists for plaintiff's failure to prosecute.

Entered this 26th day of August, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

13